IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| IN RE NONPARTY SUBPOENA TO ELIZABETH (LIBBY) BANEY BURSTEIN, | |
| *Nonparty Movant,* | |
| EMPOWER CLINIC SERVICES, LLC, | Miscellaneous Case No. _____ |
| *Plaintiff,* | Underlying Litigation: |
| v. | Case No. 4:23-CV-04123 (pending in the United States District Court for the Southern District of Texas) |
| BIO FILLING SOLUTIONS INC. F/K/A BIO42 CLINICAL FILLING SOLUTIONS, INC., HANSON IRWIN GROUP LLC, DAVID TEER, LISA HUDANICH, MATTHEW LUDOWIG, MARC HANSON, and JERRY IRWIN, | |
| *Defendants.* | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO
QUASH OR MODIFY SUBPOENA *AD TESTIFICANDUM*
TO NONPARTY ELIZABETH (LIBBY) BANEY BURSTEIN**

FAEGRE DRINKER BIDDLE & REATH, LLP
Brian P. Perryman, D.C. Bar No. 491034
W. Glenn Merten, D.C. Bar No. 461463
1500 K Street, Suite 1100
Washington, DC 20005
(202) 230-5000
brian.perryman@faegredrinker.com
glenn.merten@faegredrinker.com

*Attorneys for Nonparty Movant
Elizabeth (Libby) Baney Burstein*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................1

BACKGROUND ...................................................................................................3

    I.    The Agreement To Represent Empower, Including The Arbitration
        Agreement ..............................................................................................3

    II.    The Texas Action .....................................................................................4

    III.    Empower's Subpoenas *Duces Tecum* To Ms. Burstein And Faegre .....................8

    IV.    Empower's Subpoena *Ad Testificandum* For Ms. Burstein's Oral
        Deposition ..............................................................................................9

ARGUMENT .....................................................................................................10

    I.    Applicable Legal Standard ......................................................................10

    II.    The Subpoena Is Invalid And Subjects Ms. Burstein To An Undue
        Burden ..................................................................................................12

        A.    The Subpoena Violates The Discovery Deadline In The
            Texas Action ..............................................................................12

        B.    The Subpoena Is Pretextual And Not Proportional To The
            Needs Of The Case ......................................................................13

        C.    Any Deposition Should Be By Written Questions, Not Oral
            Examination ...............................................................................18

    III.    In The Alternative, The Court Should Modify The Subpoena To
        Limit Any Deposition Both Topically And Temporally........................................20

    IV.    Ms. Burstein Does Not Consent To Transfer This Motion To
        Quash Elsewhere.....................................................................................21

CONCLUSION..................................................................................................23

## TABLE OF AUTHORITIES

**Cases** **Pages**

*Abulkhair v. Citibank & Associates*,
    434 F. App'x 58 (3d Cir. 2011) ........................................................... 19

*AF Holdings, LLC v. Does 1-1058*,
    752 F.3d 990 (D.C. Cir. 2014) ...................................................... 12, 16

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*,
    300 F.R.D. 406 (C.D. Cal. 2014) ........................................................ 17

*In re Application of Caratube International Oil Co.*,
    730 F. Supp. 2d 101 (D.D.C. 2010) .................................................... 16

*Brown v. DFS Services, LLC*,
    434 F. App'x 347 (5th Cir. 2011) ....................................................... 12

*Brown v. Plata*,
    563 U.S. 493 (2011) ........................................................................... 12

*Coleman v. District of Columbia*,
    275 F.R.D. 33 (D.D.C. 2011) ............................................................. 11

*Coles v. Perry*,
    2002 WL 1263979 (D.D.C. June 7, 2002) .......................................... 14

*Dag Enterprises v. Exxon Mobil Corp.*,
    226 F.R.D. 95 (D.D.C. 2005) ............................................................. 12

*Diamond Services Management Co. v. Knobbe, Martens, Olson & Bear, LLP*,
    339 F.R.D. 334 (D.D.C. 2021) ........................................................... 19

*Fincher v. Keller Industries, Inc.*,
    129 F.R.D. 123 (M.D.N.C. 1990) ....................................................... 13

*Goldstein v. FDIC*,
    494 B.R. 82 (D.D.C. 2013) ................................................................ 12

*Hecht v. Pro-Football, Inc.*,
    46 F.R.D. 605 (D.D.C. 1969) ............................................................. 11

*Hood v. City of Chicago*,
    2019 WL 5295169 (D.D.C. Oct. 18, 2019) ......................................... 22

*Insituform Technologies, Inc. v. Cat Contracting, Inc.*,
    914 F. Supp. 286 (N.D. Ill. 1996)...........................................................17

*Johnson v. Saks Fifth Avenue TX, LP*,
    2007 WL 781946 (S.D. Tex. Mar. 9, 2007).........................................14

*Klayman v. Judicial Watch, Inc.*,
    2008 WL 11394176 (D.D.C. Sept. 23, 2008).......................................12

*Mannina v. District of Columbia*,
    334 F.R.D. 336 (D.D.C. 2020) ...............................................................18

*Matter of Evangeline Refining Co.*,
    890 F.2d 1312 (5th Cir. 1989) ................................................................15

*\*MedIdea, LLC v. DePuy Orthopaedics, Inc.*,
    2018 WL 4039359 (D. Mass. Aug. 23, 2018) ..............................14, 17

*In re Motion to Compel Compliance with Subpoena
    Directed to Department of Veterans Affairs*,
    257 F.R.D. 12 (D.D.C. 2009) .................................................................15

*Novak v. Capital Management & Development Corp.*,
    2004 WL 7334070 (D.D.C. Feb. 26, 2004)..........................................14

*Oppenheimer Fund, Inc. v. Sanders*,
    437 U.S. 340 (1978) ...........................................................................15, 16

*Pearce v. E.F. Hutton Group, Inc.*,
    117 F.R.D. 480 (D.D.C. 1987) ...............................................................14

*\*Phillips & Cohen, LLP v. Thorpe*,
    300 F.R.D. 16 (D.D.C. 2013) ...........................................................16, 17

*\*Pishevar v. Fusion GPS*,
    2025 WL 885115 (D.D.C. Mar. 21, 2025) ........................................11, 20

*In re Refco Securities Litigation*,
    759 F. Supp. 2d 342 (S.D.N.Y. 2011).....................................................17

*\*In re Sealed Case*,
    141 F.3d 337 (D.C. Cir. 1998)...........................................................21, 22

*Seattle Times Co. v. Rhinehart*,
    467 U.S. 20 (1984) ...................................................................................15

*Southwest Intelecom Inc. v. Compass Bank,*
    253 F. App'x 372 (5th Cir. 2007) ....................................................................12

*\*Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.,*
    276 F.R.D. 376, 385 (D.D.C. 2011) ...............................................................15

*Watts v. SEC,*
    482 F.3d 501 (D.C. Cir. 2007) ..............................................................11, 16

*Woods ex rel. United States v. SouthernCare, Inc.,*
    303 F.R.D. 405 (N.D. Ala. 2014) ...................................................................22

**Rules**

Fed. R. Civ. P. 26...............................................................6, 11, 12, 13, 17, 19, 20

Fed. R. Civ. P. 30.................................................................................................21

Fed. R. Civ. P. 31.................................................................................................18

Fed. R. Civ. P. 45...................................................................................10, 11, 20, 21

**Miscellaneous**

Fed. R. Civ. P. 45, 2013 advisory comm. notes ...................................................21, 23

Am. Arb. Ass'n, *Commercial Arbitration Rules* R-23 (eff. Sept. 1, 2022)...................................16

Pursuant to Fed. R. Civ. P. 45(d)(3)(A), nonparty Elizabeth (Libby) Baney Burstein[1] submits this memorandum of law in support of her motion for entry of an order quashing or modifying a subpoena for deposition testimony issued to her (the "Subpoena") by the plaintiff, Empower Clinic Services, LLC ("Empower"), in *Empower Clinic Services, LLC v. Bio Filling Solutions Inc. f/k/a Bio42 Clinical Filling Solutions, Inc.*, No. 4:23-CV-04123, a civil action pending in the United States District Court for the Southern District of Texas (the "Texas Action").

## PRELIMINARY STATEMENT

The Texas Action is a trade-secrets case. Its lone plaintiff, Empower, is prosecuting an array of civil claims against a collection of defendants. Among other things, Empower alleges that these defendants: misappropriated Empower's confidential information to foster a start-up company against which Empower says it competes in the pharmaceutical compounding marketplace; breached the nondisclosure, noncompetition, and nonsolicitation provisions of several defendants' employment agreements with Empower; were unjustly enriched by the same; tortiously interfered with the employment agreements; breached fiduciary duties by usurping business opportunities; aided and abetted the same; and conspired against Empower. Trial in the Texas Action is scheduled to commence in August 2025.

Empower recently served the subject Subpoena on Libby Baney Burstein, Empower's one-time outside legal counsel. At all relevant times, Ms. Burstein has been a partner at the law firm of Faegre Drinker Biddle & Reath, LLP ("Faegre"). The Subpoena notices Ms. Burstein's deposition by oral examination in this District on June 25, 2025. As an accommodation to Empower, Ms. Burstein agreed to accept the Subpoena's service on her through counsel.

---

[1] Ms. Burstein recently changed her name from Elizabeth (Libby) Baney to Elizabeth (Libby) Baney Burstein. Her name has not yet been legally changed.

The Subpoena, however, should be quashed. It is invalid and imposes an undue burden on Ms. Burstein. That is true for at least three independent reasons:

*First.* Nonparty subpoenas are subject to the same discovery deadlines as any other type of discovery. Here, discovery in the Texas Action closed in early April 2025. Ms. Burstein cannot be compelled to now sit for a post-deadline deposition.

*Second.* When discovery is intended to gather information for use in proceedings other than the pending action, as is the case here, the discovery is properly denied. Ms. Burstein's own connection to the claims and defenses in the Texas Action is attenuated. In Empower's mandatory disclosures under Fed. R. Civ. P. 26(a)(1) as of April 2025, Ms. Burstein is not even listed as a person likely to have discoverable information that Empower may use to support its claims or defenses in the Texas Action. Empower is attempting to leverage her deposition as a Trojan horse to amass information and testimony to potentially use in later arbitral proceedings against Ms. Burstein and Faegre, not to bolster Empower's position in the Texas Action. There is zero factual or legal basis for claims against Ms. Burstein and Faegre, although that has not deterred Empower.

*Third.* If the Court allows a deposition, then the deposition should only be by written questions (under Fed. R. Civ. P. 31), not on oral examination (under Fed. R. Civ. P. 30). A written deposition would reduce the risk of inadvertent disclosure of Empower's and other Faegre clients' privileged confidences. A written deposition also would be more convenient, less burdensome, and less expensive to Ms. Burstein than would be an oral deposition.

In the alternative, if a deposition is allowed, then the Court should modify the Subpoena to limit the deposition both topically and temporally. Any deposition's scope should be confined to Ms. Burstein's communications with the past and present individual defendants in the Texas Action concerning the corporate defendants. And to focus the questioning, any deposition also should be

limited to three total hours—two hours allotted to Empower and one hour allotted to the other parties and any redirect. Both limitations will cut short Empower's unwarranted fishing expedition.

Ms. Burstein does not consent to transfer this motion to quash to the Southern District of Texas. No exceptional circumstances exist that would justify such a transfer. Accordingly, the Court should enter an order quashing the Subpoena in its entirety or, in the alternative, modifying the Subpoena by imposing the requested topical and temporal limitations.

## BACKGROUND

### I.    The Agreement To Represent Empower, Including The Arbitration Agreement.

Ms. Burstein is a partner in the Washington, D.C. office of Faegre, an international law firm. Declaration of Elizabeth (Libby) Baney Burstein dated May 28, 2025 ("Burstein Decl.") ¶ 1, filed herewith. She resides in Virginia. *Id.* ¶ 2. Since 2023, Ms. Burstein has served on Faegre's board, which sets the firm's direction, strategy, and policy. *Id.* ¶ 6.

As a practicing lawyer, Ms. Burstein works on policies and issues primarily confronting health and technology stakeholders. *Id.* ¶ 7. Much of her legal work relates to digital health—the intersection of internet, technology, and health. *Id.* It includes work concerning online pharmacies; pharmacy compliance and regulatory strategy; telemedicine; compound pharmacy compliance; cannabinoid policy; opioid and substance use disorder issues; pharmaceutical supply chain security and integrity; counterfeit, falsified, and substandard medicines; Food and Drug Administration regulations and public policy; and international regulatory harmonization. *Id.*

Empower is a Houston-based compounding pharmacy. *See* Declaration of Brian Perryman dated May 28, 2025 ("Perryman Decl."), Ex. A ¶ 18, filed herewith. In December 2021, Faegre and Empower entered into an engagement letter under which Faegre and Ms. Burstein agreed to represent Empower in connection with certain pharmaceutical accreditation and related

compliance services, and such other matters as Faegre and Empower might mutually agree upon. *See* Burstein Decl. Ex. A. The letter confirms the terms of the engagement. *Id.*

In particular, the engagement letter includes an agreement to arbitrate all disputes. *Id.* The letter explains that disputes in arbitration are resolved without a jury and "with less discovery." *Id.* The letter's incorporated "Standard Terms of Engagement" provide that any arbitration will be administered by the American Arbitration Association pursuant to the Association's Commercial Arbitration Rules. *Id.* Any arbitration must be "held in the city and state in which the lawyer who has primary responsibility for your matter has his or her principal office." *Id.* The arbitration agreement covers disputes between the "Arbitration Parties," which includes Empower, on the one hand, and both Faegre and Ms. Burstein, on the other hand. *Id.*

## II.    The Texas Action.

Empower filed the Texas Action in October 2023. *See* Perryman Decl. Ex. B. In its present configuration, the Texas Action names as defendants Bio Filling Solutions Inc. ("BFS"), Hanson Irwin Group LLC ("HIG"), David Teer, Lisa Hudanich, Matthew Ludowig, Marc Hanson, and Jerry Irwin. Perryman Decl. Ex. A ¶¶ 7-13. A former defendant, Michael Lambert, was voluntarily dismissed with prejudice from the Texas Action in March 2025. *See* Perryman Decl. Ex. C.

In its operative complaint, Empower alleges that Teer, Hudanich, Ludowig, Hanson, and Irwin had access to Empower's "confidential and proprietary trade secret protected information," which they supposedly "illegally and clandestinely took" from Empower as part of a conspiracy with the defendants "and began to use those materials for their own purposes in direct competition with [Empower]." Perryman Decl. Ex. A ¶ 31. In particular, Empower alleges, "[a]s early as July 7, 2023, Defendants Teer and Hudanich began misappropriating Empower Pharmacy's trade

secrets and confidential information, as part of a conspiracy with Defendants Ludowig, Lambert,

HIG, Hanson, and Irwin to facilitate the creation and funding of Defendant BFS." *Id.* ¶ 32.

Empower further alleges that, over the next several weeks, it "suffered an exodus of high-

level employees." *Id.* ¶ 35.

> Defendant Ludowig, Vice President of Regulatory and Legislative
> Affairs, indicated he would resign around August 14, 2023, and
> formally submitted a letter of resignation on August 31, 2023, and
> completed his last day on September 1, 2023. Mr. Lambert resigned
> on August 21, and similarly completed his last day on September 1,
> 2023. Defendant Hudanich resigned on September 20, 2023 and
> gave two-days' notice, completing her last day on September 22,
> 2023. Defendant Teer resigned on September 21, 2023, and
> completed his last day on September 29, 2023, further misleading
> Empower Pharmacy by citing "family commitments" as a
> justification.

*Id.* And Empower alleges that

> BFS began soliciting other Empower Pharmacy employees to join
> BFS via Defendants Teer and Hudanich, aided by a BFS investor
> slide deck, and in breach of their Empower Pharmacy confidentiality
> and non-disclosure agreements. This investor slide deck was based
> upon the trade secrets and confidential information Empower
> Pharmacy invested substantial funds into. Those attempts to solicit
> revealed that Defendant BFS would engage in the very same
> manufacturing venture that Empower Pharmacy was pursuing
> utilizing the trade secrets and confidential information gleaned from
> Empower Pharmacy.

*Id.* ¶ 51.

On these bases, in the Texas Action Empower asserts counts for violations of the federal

Defend Trade Secrets Act, 18 U.S.C. § 1831 *et seq.* (Count I), violations of the Texas Uniform

Trade Secrets Act, Tex. Civ. Prac. & Rem. Code § 134A.001 *et seq.* (Count II), breaches of

contractual confidentiality and nonsolicitation obligations in certain defendants' employment

agreements (Counts III, IV, and V), unjust enrichment (Count VI), tortious interference (Count

VIII),[2] breach of fiduciary duty (Count IX), aiding and abetting breach of fiduciary duty (Count X), and civil conspiracy (Count XI). *See id.* ¶¶ 58-121. Empower's operative complaint makes no reference to either Ms. Burstein or Faegre.

In their joint operative answer, multiple defendants[3] denied liability and other factual matters asserted by Empower, but also admitted several matters:

- "Defendants admit the registration for Bio42 Clinical Filling Solutions Inc. was filed on August 23, 2023, and identified Defendant Ludowig and Mr. Stephen Burrows as Directors. Defendants further admit that Defendant Ludowig was involved in the leadership of Defendant BFS." Perryman Decl. Ex. D ¶ 50.

- "Defendants admit to having discussed potential other employment or business options in the summer 2023." *Id.* ¶ 56.

- "Defendants admit that draft investor decks exist, which contain the information contained in Paragraph 57, but deny that these decks were furnished to investors." *Id.* ¶ 57.

These defendants specifically "deny that Defendant HIG or BFS are engaged in business operations" and "note that these two companies have been dissolved." *Id.* ¶ 59. Defendants' operative answer makes no reference to either Ms. Burstein or Faegre.

Under the Federal Rules of Civil Procedure, a party must, without awaiting a discovery request, disclose to the other parties the name of each individual "likely to have discoverable information" that "the disclosing party may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(i). A party also must timely supplement these mandatory disclosures if they become incomplete or incorrect. Fed. R. Civ. P. 26(e)(1). In the Texas Action, Empower has identified exactly which individuals fit this bill—and they do *not* include Ms. Burstein or others at Faegre. Its Fourth Amended and Supplemental Initial Disclosures dated April 18, 2025, which Empower

---

[2] There is no Count VII in the operative complaint, which appears to be a typographical error.

[3] The jointly answering defendants are BFS, HIG, Mr. Teer, Ms. Hudanich, Mr. Ludowig, Mr. Hanson, and Mr. Irwin.

attached as an exhibit to its May 9, 2025 opposition to Mr. Ludowig's motion for summary judgment, make no reference to Ms. Burstein or Faegre. *See* Perryman Decl. Ex. E. Similarly, defendants' Amended and Supplemental Initial Disclosures dated March 18, 2025 do not identify Ms. Burstein as an individual likely to have discoverable information they may use to support their own claims or defenses. *See* Perryman Decl. Ex. F. And they make no reference to Faegre. *See id.* (Although Ms. Burstein does not have access to all earlier iterations of the parties' mandatory disclosures, it stands to reason that she was not previously identified.)

The Texas Action is drawing closer to a trial set to begin on August 18, 2025. *See* Perryman Decl. Ex. G. Designations of deposition transcripts for use at trial are due by August 1, 2025.

Discovery closed on April 4, 2025, although the operative scheduling order further provides: "Counsel may, by agreement continue discovery beyond the deadline. No continuance will be granted because of information acquired in post-deadline discovery." *Id.* In addition, the motions deadline was April 18, 2025—no motions except those *in limine* may now be filed. *Id.*

Empower has itself invoked the discovery deadline to object to post-deadline discovery. For instance, in May 2025, Empower objected to Mr. Ludowig's second set of interrogatories as untimely served in violation of the deadline. *See* Perryman Decl. Ex. H.

For his part, Mr. Ludowig has moved to continue the trial date and discovery deadline in the Texas Action. Empower has adamantly opposed any continuance. *See* Perryman Decl. Ex. I. In May 2025, Empower argued: "If Mr. Ludowig gets his do-over, Empower will have to re-litigate this case, expending significant time and money at a late stage in litigation, which has been pending for 18 months." *Id.* at 8. Empower criticized Mr. Ludowig who, in Empower's view, failed to explain "why he did not timely comply with the previous scheduling order, which had already granted a nearly eight-month extension to the initial four-month discovery period." *Id.* at 4.

### III.    Empower's Subpoenas *Duces Tecum* To Ms. Burstein And Faegre.

Empower's own lack of diligence in seeking Ms. Burstein's deposition is inexcusable. In September 2024, Empower's counsel sent a letter to Faegre describing the Texas Action as "a trade secrets case" against the defendants, "including Matthew R. Ludowig, who was for a time the General Counsel of Empower and then served in a different role—still employed as counsel to Empower—until September 1, 2023." Perryman Decl. Ex. ¶ J. The letter explained that, in the course of discovery, "a document has been produced by the defendants indicating that a lawyer at your firm, Libby [Burstein], was: 1) in communication with Mr. Ludowig during the time that he was employed by Empower regarding creating the defendant entities or other entities associated with defendants …; and 2) provided advice and assistance to Mr. Ludowig regarding the same." *Id.* The letter continued: "Because Ms. [Burstein] was personally providing legal advice to—and receiving confidential information from—Empower during this time; and that Empower remains a client of your firm, this document is very concerning to our client and warrants further investigation." *Id.* The letter threatened to serve subpoenas on Ms. Burstein and Faegre. *Id.*

Over the succeeding weeks, Ms. Burstein and Faegre worked cooperatively with Empower's counsel on a negotiated production of documents. Ms. Burstein and Faegre agreed to accept service of two subpoenas *duces tecum* directed to each of them. Perryman Decl. ¶ 14. In November 2024, Empower served separate subpoenas *duces tecum*, seeking an array of documents. *See id.* & Ex. K. In November and December 2024, Ms. Burstein and Faegre collectively made two separate productions of responsive documents to Empower. Perryman Decl. ¶ 16. Documents were produced to Empower not because they are relevant to, or proportionate to the needs of, the Texas Action, but to return Empower property and thereby discharge obligations

under the engagement letter. *See* Burstein Ex. A ("All client supplied materials, correspondence with you or with third parties and all attorney end-product are your property.").

Some of the documents produced reflect that, before and after they separated from employment with Empower, Mr. Ludowig and Mr. Lambert transmitted to Ms. Burstein various investor-oriented materials concerning BFS, on which Ms. Burstein offered a handful of comments. Perryman Decl. ¶ 16. Ms. Burstein has never communicated with BFS (except to the incidental extent that Mr. Ludowig or Mr. Lambert may have been acting on its behalf), HIG, David Teer, Lisa Hudanich, Marc Hanson, or Jerry Irwin. Burstein Decl. ¶ 8.

In April 2025, Empower requested a business-records declaration authenticating the entire subpoenaed document production. Perryman Decl. ¶ 17. Later that month, a Faegre custodian of records provided Empower with the requested declaration. Perryman Decl. Ex. L.

## IV.    Empower's Subpoena *Ad Testificandum* For Ms. Burstein's Oral Deposition.

Empower was not finished with Ms. Burstein, however. On April 17, 2025, one day after Faegre provided its custodian's declaration, Empower's counsel requested that Ms. Burstein accept service of a subpoena *ad testificandum*, for an oral deposition scheduled for May 2, 2025. Perryman Decl. ¶ 18. The request was puzzling: It came nearly two weeks *after* discovery had closed in the Texas Action. Any subpoena Empower issued would be facially invalid.

Ms. Burstein's counsel explained as much to Empower's counsel in a letter dated April 22, 2025. *See* Perryman Decl. Ex. M. Because of the discovery deadline in the Texas Action, Ms. Burstein declined to sit for a deposition and, in addition, further declined to waive service of any subpoena to compel her deposition attendance. *Id.* Through her counsel, Ms. Burstein advised that, although service of a subpoena had not yet occurred, if that remained Empower's intention, then the parties should discuss the matter telephonically. *Id.*

Rather than first discussing the matter as requested, Empower quickly attempted to serve a subpoena *ad testificandum* on Ms. Burstein. Perryman Decl. ¶ 20. However, Empower later withdrew that subpoena. *Id.* After some discussion, on May 20, 2025, Empower and Ms. Burstein agreed to an arrangement under which Ms. Burstein would accept service of a subpoena *ad testificandum* subject to certain conditions concerning the deposition's scheduling. *Id.* ¶ 22. Ms. Burstein's counsel explained that although she was willing to accept service as an accommodation to Empower, Ms. Burstein intended to move to quash or modify the subpoena. *Id.* ¶ 23. She reserved all rights and challenges to the subpoena's propriety. *Id.* On May 27, 2025, Empower served the Subpoena on Ms. Burstein via her counsel, who accepted service on Ms. Burstein's behalf. *Id.* ¶ 24. The Subpoena purports to require a June 25, 2025 oral deposition. Perryman Decl. Ex. N. The deposition is supposed to occur at Empower's counsel's office in the District of Columbia. *Id.* This motion to quash followed.

Counsel have discussed the Subpoena, the circumstances of its issuance and service, and this motion by telephone on April 28, 2025, and May 9, 2025, and have exchanged extensive correspondence regarding the same, but could not resolve their differences. Perryman Decl. ¶ 26. For instance, during the April 28, 2025 call between their respective counsel, Ms. Burstein offered to Empower to give a deposition upon written questions in lieu of a deposition on oral examination. *Id.* ¶ 21. During the May 9, 2025 call, however, Empower rejected Ms. Burstein's offer. *Id.*

## ARGUMENT

### I.    Applicable Legal Standard.

"On timely motion, the court for the district where compliance is required must quash or modify a subpoena that," among other things, "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3). "A party or attorney responsible for issuing and serving a subpoena must take reasonable

steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court

for the district where compliance is required must enforce this duty and impose an appropriate

sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney

who fails to comply." Fed. R. Civ. P. 45(d)(1). The undue-burden standard applies to both

documentary and testimonial subpoenas. *See Watts v. SEC*, 482 F.3d 501, 508-09 (D.C. Cir. 2007).

Nonparty status is relevant in considering the burden. *See id.* at 509. "It may be added that the

Court has inherent power to protect anyone from oppressive use of process, even if no oppression

is actually intended." *Hecht v. Pro-Football, Inc.*, 46 F.R.D. 605, 606 (D.D.C. 1969).

Being a form of discovery, subpoenaed depositions by oral examination are equally subject

to the general discovery limits imposed on parties by Fed. R. Civ. P. 26. *See Coleman v. District of*

*Columbia*, 275 F.R.D. 33, 36 (D.D.C. 2011) ("No requirement of relevance is included in the text

of Rule 45; however, it is settled that a subpoena is limited in scope by Rule 26(b)(1) of the Federal

Rules of Civil Procedure."). In fact, the undue-burden standard of Rule 45 mirrors the standard of

Rule 26. *See Pishevar v. Fusion GPS*, 2025 WL 885115, at *3 (D.D.C. Mar. 21, 2025). The scope

of discovery is limited as follows:

> Parties may obtain discovery regarding any nonprivileged matter
> that is relevant to any party's claim or defense and proportional to
> the needs of the case, considering the importance of the issues at
> stake in the action, the amount in controversy, the parties' relative
> access to relevant information, the parties' resources, the importance
> of the discovery in resolving the issues, and whether the burden or
> expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

"If a subpoena compels disclosure of information that is not properly discoverable, then

the burden it imposes, however slight, is necessarily undue: why require a party to produce

information the requesting party has no right to obtain? The question then becomes what sort of

information is properly discoverable." *AF Holdings, LLC v. Does 1-1058*, 752 F.3d 990, 995 (D.C. Cir. 2014). The Court must limit a discovery request "if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

## II.    The Subpoena Is Invalid And Subjects Ms. Burstein To An Undue Burden.

The Subpoena should be quashed for multiple independent reasons.

### A.    The Subpoena Violates The Discovery Deadline In The Texas Action.

As a threshold matter, the Subpoena is untimely. Discovery in the Texas Action closed on April 4, 2025. Perryman Decl. Ex. G. Notably, Empower itself has invoked the April discovery deadline to object to post-deadline discovery. *See* Perryman Decl. Ex. H.

"Orderly trial management may require discovery deadlines," *Brown v. Plata*, 563 U.S. 493, 523 (2011), including with respect to nonparties. Unsurprisingly, then, "Rule 45 subpoenas are subject to the same discovery deadlines and orders as any other type of discovery." *Goldstein v. FDIC*, 494 B.R. 82, 87 (D.D.C. 2013) ("a Rule 45 subpoena cannot be used to escape from a scheduling-related discovery order"); *see Brown v. DFS Servs., LLC*, 434 F. App'x 347, 351-52 (5th Cir. 2011) (affirming quashal of untimely served subpoenas); *Sw. Intelecom Inc. v. Compass Bank*, 253 F. App'x 372, 376 (5th Cir. 2007) (same); *Klayman v. Judicial Watch, Inc.*, 2008 WL 11394176, at *3 (D.D.C. Sept. 23, 2008) (quashing untimely served subpoena); *Dag Enters. v. Exxon Mobil Corp.*, 226 F.R.D. 95, 104 (D.D.C. 2005) ("A subpoena pursuant to Federal Rule of Civil Procedure 45 to a third-party is not exempt from discovery deadlines in scheduling orders…. Rule 45 subpoenas are 'discovery' under Rules 16 and 26 of the Federal Rules of Civil Procedure,

and are subject to the same deadlines as other forms of discovery."). Consistent with that principle, "parties' discovery rights in [the district of compliance] can rise no higher than their level in the district of trial." *Fincher v. Keller Indus., Inc.*, 129 F.R.D. 123, 125 (M.D.N.C. 1990) (holding that plaintiffs were not entitled to an order compelling compliance with a deposition subpoena, in view of fact that discovery in the underlying litigation had already concluded). The untimely Subpoena is facially invalid, imposes an undue burden on that basis and, accordingly, should be quashed.

Ms. Burstein is aware that the operative scheduling order provides that counsel may, by agreement, continue discovery beyond the deadline. But neither Ms. Burstein nor her counsel agree to her post-deadline deposition. In addition, there is no evidence that counsel for the parties in the Texas Action have themselves agreed to allow Ms. Burstein's post-deadline deposition. So there is no reason to believe the counsel-agreement exception excuses Empower here, even assuming Ms. Burstein's own counsel were to reverse position. Nor still is there any reason to believe Empower has not otherwise "had ample opportunity to obtain the information by discovery in the action." Fed. R. Civ. P. 26(b)(2)(C)(ii).

**B.       The Subpoena Is Pretextual And Not Proportional To The Needs Of The Case.**

The Subpoena also imposes an undue burden on Ms. Burstein because, although Empower will portray the Subpoena as advancing necessary discovery in the Texas Action, that portrayal is false. Ms. Burstein's possible knowledge of certain defendants' alleged misconduct, and of the alleged misconduct's timing, can be charitably described as "marginal" to that Action. Ms. Burstein is not referenced anywhere in either the operative complaint or answer. To the best of her knowledge, before May 2025, Ms. Burstein was not referenced in *any* filing in the Texas Action.

She is a discovery afterthought. The Court need not take Ms. Burstein's word for it. Take Empower's. Although Empower identified 24 other individuals, and although Ms. Burstein had

produced subpoenaed documents months earlier, Ms. Burstein was not identified in Empower's April 2025 mandatory disclosures, *see* Perryman Decl. Ex. E; *see also id.* Ex. F,[4] as an individual likely to have discoverable information that Empower may use to support its claims or defenses. *See MedIdea, LLC v. DePuy Orthopaedics, Inc.*, 2018 WL 4039359, at *5 (D. Mass. Aug. 23, 2018) (quashing subpoena served on nonparty doctors not identified in plaintiff's Rule 26(a)(1)(A) mandatory disclosures because plaintiff's "attempts to obtain testimony and documents from the two named doctors are at odds with its own disclosures" and, further, "constitute an improper attempt to gather information [plaintiff] wishes to use" in other legal proceedings "where [plaintiff] is not generally entitled to discover such information"). And there is more. Since at least September 2024, Empower has been aware that Ms. Burstein supposedly provided "advice and assistance" to Mr. Ludowig regarding the defendant entities, *see* Perryman Decl. Ex. J,[5] yet Empower first sought Ms. Burstein's deposition testimony only two weeks *after* the close of discovery in April 2025. Any argument that her testimony is necessary to advance its claims or defenses is thus firmly refuted by Empower's own words and omissions.

The most Ms. Burstein might conceivably contribute to the record in the Texas Action is only what the documents produced in response to Empower's subpoenas *duces tecum* already reflect: That before and after they separated from employment with Empower, Mr. Ludowig and

---

[4] This is not an invitation to now belatedly supplement the mandatory disclosures. *See Johnson v. Saks Fifth Ave. TX, LP*, 2007 WL 781946, at *15 (S.D. Tex. Mar. 9, 2007) (precluding testimony of witness never disclosed as "an individual with relevant facts" before discovery ended); *Novak v. Capital Mgmt. & Dev. Corp.*, 2004 WL 7334070, at *5 (D.D.C. Feb. 26, 2004) ("'Supplementing' previous information on the day discovery ends when it could have been supplemented sooner should not be tolerated."); *Coles v. Perry*, 2002 WL 1263979, at *2 (D.D.C. June 7, 2002) ("learning that a party will rely on the testimony of a witness after discovery closes will usually be harmful"); *Pearce v. E.F. Hutton Group, Inc.*, 117 F.R.D. 480, 482 (D.D.C. 1987) (precluding testimony of witnesses first identified on the last day of discovery).

[5] To be clear, none of the defendants in the Texas Action, Mr. Ludowig included, have had an attorney-client relationship with either Ms. Burstein or Faegre.

Mr. Lambert transmitted to Ms. Burstein various investor-oriented materials concerning BFS, on which Ms. Burstein offered a handful of comments. If offered to show that these individuals acted in furtherance of BFS's interests during summer 2023, then Ms. Burstein's testimony would only pointlessly corroborate what is already essentially undisputed by both sides in the Texas Action. *See, e.g.*, Perryman Decl. Ex. D ¶¶ 50, 56, 57. Mr. Lambert, moreover, is no longer even a defendant in the Texas Action. *See* Perryman Decl. Ex. C. A court may properly quash a subpoena for a deposition that will be "of limited probative value and largely cumulative." *Matter of Evangeline Refining Co.*, 890 F.2d 1312, 1321 (5th Cir. 1989); *see Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.*, 276 F.R.D. 376, 385 (D.D.C. 2011) (quashing subpoena for deposition of former patent counsel because counsel was not appropriate source of information regarding patent interview where party could instead depose patent examiner and inventor); *In re Mot. to Compel Compliance with Subpoena Directed to Dep't of Vet. Affairs*, 257 F.R.D. 12, 19 (D.D.C. 2009) (quashing subpoena for deposition as "unduly burdensome because of the absence of any showing that the information sought is not available from other sources").

Even if Ms. Burstein's testimony might have some relevance to the Texas Action, it still is not "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "In deciding whether a request comes within the discovery rules, a court is not required to blind itself to the purpose for which a party seeks information." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 353 n.17 (1978); *cf. Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984) ("pretrial discovery by depositions … has a significant potential for abuse"). The Subpoena here is sham discovery. Ms. Burstein's possible testimony regarding certain defendants' scienter is not why Empower served the Subpoena. Empower is fixated on *Ms. Burstein's* conduct. *See* Perryman Decl. Ex. J (asserting that, as Empower's counsel, Ms. Burstein's conduct "*is very concerning to [Empower] and warrants*

15

*further investigation*") (emphasis added). The Subpoena is a hunt for (nonexistent) claims against Mr. Burstein and Faegre. And it is a backdoor attempt to secure testimony Empower might otherwise be unable to secure in arbitration. Empower's arbitration agreement with Ms. Burstein and Faegre consigns matters of discovery and prehearing testimony to the arbitral panel. *See* Am. Arb. Ass'n, *Commercial Arbitration Rules* R-23 (eff. Sept. 1, 2022), *available at* https://www.adr.org/sites/default/files/CommercialRules_Web_1.pdf. "The purpose of arbitration in large part is to have simplified, expedited proceedings and courts should be reluctant to adopt rules which interfere with the accomplishment of those purposes." *In re Application of Caratube Int'l Oil Co.*, 730 F. Supp. 2d 101, 107 (D.D.C. 2010) (citation omitted). Allowing the deposition here would—and is opportunistically designed to—interfere with the limits on discovery Empower agreed to in the arbitration agreement. *See id.* at 106-07 (refusing to enforce subpoenas that might "interfere with the parties' bargained-for expectations concerning the arbitration process").

All of this points toward quashing the Subpoena. As the Supreme Court has explained, "when the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied." *Oppenheimer Fund*, 437 U.S. at 353 n.17. That is true, *a fortiori*, when the discovery is sought from a nonparty. *See Watts*, 482 F.3d at 509. And it is most true of all where, as here, "the Subpoena is a naked attempt to gather information for use in evaluating, and perhaps litigating, a claim against" the nonparty recipient. *Phillips & Cohen, LLP v. Thorpe*, 300 F.R.D. 16, 18 (D.D.C. 2013) (through subpoena to nonparty law firm that had represented certain relators in *qui tam* action, other relators who brought legal malpractice action against their own former counsel in *qui tam* action sought documents irrelevant to the existing malpractice action); *see AF Holdings*, 752 F.3d at 996 (holding that subpoenas which "sought the vast majority" of information "for reasons unrelated to its pursuit of this particular lawsuit" should

16

have been quashed); *In re Refco Secs. Litig.*, 759 F. Supp. 2d 342, 345 (S.D.N.Y. 2011) (limiting subpoena with the "true purpose" of seeking information to "bolster claims" in separate arbitration, not the underlying litigation); *Insituform Technologies, Inc. v. Cat Contracting, Inc.*, 914 F. Supp. 286, 287 (N.D. Ill. 1996) (quashing subpoena where the information sought "goes more to the issue of [the subpoena recipient's] potential liability for patent infringement than to damages for which the defendants in the underlying case may be liable").

Return, then, to Rule 26's proportionality test. The Court must consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Start with the obvious: "Preparing and sitting for a deposition is always a burden, even when documents are not requested, particularly for a non-party." *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 412 (C.D. Cal. 2014). And it is even more of a burden here because allowing a deposition would rob Ms. Burstein and Faegre of the benefit of the arbitral discovery limitations Empower agreed to when it became their client. Although Empower will contend that much is "at stake," the supposed "importance" of Ms. Burstein's testimony is plainly marginal, as evidenced by the parties' apathy toward her during discovery. According to all parties, she is not an individual likely to have discoverable information. *See* Perryman Decl. Exs. E & F. The facts sought to be proved, moreover, are already readily accessible to Empower in the form of the subpoenaed document production and from the testimony of the past and present defendants, most notably Mr. Ludowig and Mr. Lambert. The mix of pertinent considerations thus militates strongly in favor of quashing the Subpoena as imposing an undue burden. *See MedIdea*, 2018 WL 4039359, at *5; *Phillips & Cohen*, 300 F.R.D. at 18.

**C.      Any Deposition Should Be By Written Questions, Not Oral Examination.**

The Court should not allow a deposition of Ms. Burstein at all. If, however, the Court does allow a deposition, then the deposition should be by written questions only.

Oral examination under Fed. R. Civ. P. 30 is not the only way to conduct a deposition. A party may, by written questions, depose any person—party or nonparty. *See* Fed. R. Civ. P. 31(a)(1). "The deponent's attendance may be compelled by subpoena under Rule 45." *Id.* Although Ms. Burstein offered to give a written deposition to Empower in lieu of an oral deposition, that offer was rejected. Perryman Decl. ¶ 21. If a deposition must occur, however, then a written deposition would be superior to an oral one, and the Court should limit discovery accordingly.

Reasons why abound. In any litigation involving both clients and nonclients, the deposition of one party's counsel is a virtual minefield. Here, a written deposition would mitigate the potential for inadvertent overdisclosure of attorney-client communications and privileged confidences on matters not implicitly waived by Empower's questions, or matters raised at the deposition by the nonclient defendants' additional questioning. *See Mannina v. District of Columbia*, 334 F.R.D. 336, 348 (D.D.C. 2020) (to avoid inadvertent disclosure of client confidences, ordering written deposition of attorney in lieu of an oral deposition). Ms. Burstein does not wish to accidentally expose Empower's confidences to the defendants in the Texas Action or otherwise to the public at large. Likewise, as a practicing attorney who represents others, Ms. Burstein is equally concerned about the potential for inadvertent disclosure of confidences held by Faegre clients other than Empower. "Even a limited oral deposition on these topics risks inadvertent disclosure of privileged material or work product." *Id.* A written deposition would allow Ms. Burstein to more carefully consider the questions posed before determining how she should confine her answer.

Next, compared to an oral deposition, a written deposition would be "more convenient," "less burdensome," and "less expensive" to Ms. Burstein. Fed. R. Civ. P. 26(b)(2)(C)(i). Ms. Burstein is not a party in the Texas Action and her connection to the case is tenuous. Yet an oral deposition would require Ms. Burstein, a busy attorney, to prepare by reviewing documents already produced to Empower and to thereafter sit for a deposition on a day designated by Empower. By contrast, a written deposition would allow Ms. Burstein to prepare across a more flexible timeline. Because the events at issue occurred two years ago, moreover, the more deliberative pace of a written deposition is likely to elicit better informed answers.

A written deposition also would shield Ms. Burstein (and Faegre) against Empower's ulterior motives in seeking her deposition. Although in ordinary circumstances oral depositions may be superior means of dealing with adversarial witnesses, that is simply not a valid concern here: Empower and Ms. Burstein (and Faegre) agreed to arbitrate all disputes vis-à-vis each other. In proceedings outside of arbitration, a litigation-style adversarial discovery device is anathema to that agreement. "Where potentially important legal rights are implicated by a subpoena and alternative sources are more convenient or less burdensome, those alternatives should be explored first." *Diamond Servs. Mgmt. Co. v. Knobbe, Martens, Olson & Bear, LLP*, 339 F.R.D. 334, 339 (D.D.C. 2021) (cleaned up) (quashing subpoena to nonparty law firm). In the Texas Action, therefore, a written deposition should be equally acceptable to Empower as an oral deposition. If Empower wishes to press its claims through genuinely nonadversarial fact-gathering, then it can accomplish that end via a written deposition. *See Abulkhair v. Citibank & Assocs.*, 434 F. App'x 58, 62 (3d Cir. 2011) ("Abulkhair could have taken depositions by written questions. While we understand that oral depositions might have been preferable to him, Abulkhair still could have acquired relevant information by taking advantage of that discovery tool.").

III.    **In The Alternative, The Court Should Modify The Subpoena To Limit Any Deposition Both Topically And Temporally.**

Empower is not entitled to a discovery fishing expedition and, especially, an expedition that would flagrantly circumvent Empower's agreement to arbitrate its separate disputes with Ms. Burstein and Faegre. And Ms. Burstein has other concerns about the putative deposition's scope. These include concerns about inquiries into: (i) Faegre clients other than Empower; and (ii) communications concerning Empower occurring on and after September 18, 2024, including the response to Empower's earlier subpoenas *duces tecum*. Such inquiries would be irrelevant and in violation of the attorney-client privilege and work-product doctrine.

One ameliorative approach would be to modify the Subpoena by topically limiting the deposition's scope. *See Pishevar*, 2025 WL 885115, at *5-7 (finding that certain "deposition topics in the subpoenas sweep too broadly from a relevance perspective" and limiting deposition accordingly). For good cause, the Court may protect a nonparty witness from "undue burden" by "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1)(D); *see also* Fed. R. Civ. P. 45(d)(3)(A)(iv) (court "must" modify subpoena to protect against "undue burden").

If the Court does not quash the Subpoena outright, then the Court should, at a minimum, forbid inquiry at any deposition of Ms. Burstein into matters that exceed the discrete topic of Ms. Burstein's communications with the past and present individual defendants in the Texas Action (*e.g.*, Mr. Ludowig and Mr. Lambert) concerning the corporate defendants in the Texas Action (*e.g.*, BFS). This topical limitation will preserve any conceivable interest may Empower have in supporting its claims and defenses in the Texas Action while simultaneously acknowledging that Ms. Burstein, a nonparty, should not be compelled to testify about whatever topic strikes

Empower's fancy. The topical limitation also would help honor Empower's arbitration agreement, which expressly contemplates more-limited discovery.

A second ameliorative approach would be to modify the Subpoena by abridging the allowable deposition time from seven hours to three total hours: Two hours allotted to Empower and one hour allotted to the other parties and any redirect. *See* Fed. R. Civ. P. 30(d)(1) ("Unless otherwise stipulated *or ordered by the court*, a deposition is limited to 1 day of 7 hours.") (emphasis added). This modification would encourage Empower to focus its questioning, without embarking on frolics and detours to explore potential claims against Ms. Burstein or Faegre.

## IV.     Ms. Burstein Does Not Consent To Transfer This Motion To Quash Elsewhere.

Finally, the Court should retain this motion, rather than transfer it to the Southern District of Texas. "When the court where compliance is required did not issue the subpoena, it may transfer a motion under [Fed. R. Civ. P. 45(d)(3)] to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances." Fed. R. Civ. P. 45(f). Transfer of a motion to quash or modify a Rule 45 subpoena "should be reserved for the extraordinary, complex case in which the transferee court is plainly better situated to resolve the discovery dispute." *In re Sealed Case*, 141 F.3d 337, 343 (D.C. Cir. 1998) (Henderson, J., concurring). In this regard, "the proponent of transfer bears the burden of showing that such circumstances are present." Fed. R. Civ. P. 45, 2013 advisory comm. notes. "The prime concern should be avoiding burdens on local nonparties subject to subpoenas, and it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions." *Id.*

Ms. Burstein does not consent to a transfer of this motion to the Southern District of Texas. And she is unaware of any "exceptional circumstances" that could justify such an inconvenient transfer. Ms. Burstein is an individual who resides in Virginia, Burstein Decl. ¶ 2; she is not a

corporate entity. She and her counsel are officed in this District. *Id.* ¶ 1. The issues the Court should resolve on this motion, moreover, are neither so complicated nor so bound up with any prior rulings in the Texas Action that it would be imprudent for this Court to rule. And, from a judicial perspective, Ms. Burstein's objections to the Subpoena are fairly quotidian. *See Sealed Case*, 141 F.3d at 343 (Henderson, J., concurring) (movant's objections that subpoena should be quashed because it is "overbroad," seeks information "not relevant to the underlying lawsuit," and was issued "for improper purposes" could all "be readily assessed by the district court here as such arguments routinely are"); *Hood v. City of Chicago*, 2019 WL 5295169, at *3 (D.D.C. Oct. 18, 2019) (denying transfer of motion to quash subpoena notwithstanding movant's objection to "the burdensomeness of the sought-after testimony" and the fact "that the Illinois action has been pending for several years and the court has ruled on a number of discovery motions"). Furthermore, at least in the context of arbitration, Empower pointedly agreed that all disputes with Ms. Burstein (and Faegre) must be resolved in this District, not elsewhere. *See* Burstein Decl. Ex. A.

To be sure, the Southern District of Texas is more familiar with the procedural and substantive aspects of the Texas Action. That, however, cannot be what Congress meant when it required a finding of "exceptional circumstances" before ordering a transfer, lest the exception swallow the rule. Nearly every subpoena will raise issues related to the underlying litigation and that are likely to require future resolution by the issuing court. *See Woods ex rel. United States v. SouthernCare, Inc.*, 303 F.R.D. 405, 407-09 (N.D. Ala. 2014) ("If judicial efficiency is the primary concern, transfer would almost always be appropriate in order to avoid multiple rulings on the same issues."). So the Southern District of Texas's familiarity with the Texas Action counts as an ordinary, not an extraordinary, circumstance. If this Court finds the Texas court's greater familiarity helpful, moreover, then this Court should simply "consult with the judge in the issuing court

presiding over the underlying case while addressing subpoena-related motions," just as Congress intended. Fed. R. Civ. P. 45, 2013 advisory comm. notes. But transfer is unwarranted.

## CONCLUSION

The Court should enter an order quashing the Subpoena in its entirety or, in the alternative, temporally limiting the deposition to three total  hours (with two hours allotted to Empower) and topically limiting the deposition's scope to Ms. Burstein's communications with the past and present individual defendants in the Texas Action concerning the corporate defendants.

Dated: May 28, 2025                                  Respectfully submitted,

                                                                  FAEGRE DRINKER BIDDLE & REATH, LLP

                                  By:     */s/ Brian P. Perryman*
                                                Brian P. Perryman, D.C. Bar No. 491034
                                                W. Glenn Merten, D.C. Bar No. 461463
                                                1500 K Street, Suite 1100
                                                Washington, DC 20005
                                                (202) 230-5000
                                                brian.perryman@faegredrinker.com
                                                glenn.merten@faegredrinker.com

                                                *Attorneys for Nonparty Movant*
                                                *Elizabeth (Libby) Baney Burstein*